UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| HOLLIE K. WIGGINS and<br>LARRY F. WIGGINS, JR.,<br><br> Plaintiffs,<br><br>v.<br><br>BELK, INC.,<br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. CV411-088<br>)<br>)<br>)<br>) |

## O R D E R

Before the Court is plaintiffs' Fed. R. Civ. P. 37(a)(3)(B) motion to compel discovery in this slip-and-fall case. (Doc. 21.) Hollie Wiggins claims that she tripped over a protruding outlet at a Savannah, Georgia Belk department store.[1] (*Id.* at 2.) Plaintiffs request information from 30 additional Belk stores within 150 miles of Savannah relating to similar claims.[2] (*Id.*) Defendant objects to plaintiffs' request and seeks a Fed. R. Civ. P. 26(c) protective order. (Doc. 25.)

---

[1] She broke bones in her ankle and foot and contends that she remains a partially disabled from her injuries. (Doc. 1 at 8.)

[2] Initially plaintiffs requested the information from more than half of Belk's 305 department stores. (Doc. 21 at 4.) They now seek the information only from those stores within 150 miles of Savannah. (*Id.*)

At issue are five interrogatories -- numbers 3, 7, 8, 10, and 17. In interrogatory number 3, plaintiffs ask Belk to identify any documents concerning injuries or alleged injuries resulting from tripping on an electrical outlet in Belk stores in Georgia or the Carolinas since 1995. (Doc. 21 at 7.) Number 5 asks Belk to identify every claim for injury caused by tripping on an electrical outlet. (*Id.* at 8.) Number 7 asks for every incident or other report related to tripping on an electrical floor outlet at Belk Savannah and all other Belks within 150 miles. (*Id.* at 12.) In number 8, plaintiffs seek all documents reflecting all tripping and falling claims of any customer or employee since 1995. (*Id.* at 13.) Number 10 asks Belk to identify documents relating to tripping injuries relating to "objects or things" and to specify which of the incidents were caused by electrical floor outlets. (*Id.* at 9.) And finally, interrogatory 17 requests the name and location of every Belk store that has raised outlets substantially the same as the one at issue here and that has outlets that are level with the floor.[3] (*Id.* at 10.) Plaintiffs, however, have since specified that they only seek discovery from the thirty stores nearest the Savannah location rather than from all Belk stores in the Carolinas and

---

[3] Additionally, plaintiffs ask the defendant to produce each document pertinent to the above interrogatories. (Doc. 21 at 14.)

2

Georgia. (There are 154 stores in the Carolinas and Georgia, and there are 305 total Belk stores.) Hence, some of the interrogatories are substantially less burdensome than they initially appear. (*Id.* at 2.)

Belk has broken its objections into three groupings. First, as to interrogatories 3, 5, 7, and 8, defendant argues that it would be forced to perform an inordinate amount of work to produce information which is of little value. (Doc. 25 at 4-9.) While it maintains a limited, centralized computerized database of its general liability claims (*id.* (citing McGann aff.)), the database simply categorizes the claims as "(1) slip/trip/fall; (2) object strike/fall; or (3) other." (*Id.* at 6.) The database does not contain specifics of each incident, and it does not include information for any incidents that occurred prior to February 2005. (*Id.*) Moreover, it only reports incidents where medical treatment was sought or contemplated at the time of the injury. (*Id.*) A response, then, would require defendant to search the centralized database for every single incident that occurred in the 30 targeted stores and then assign an employee to manually search each available claim file. (*Id.*) According to Belk policy, it only maintains those files centrally for three years. (*Id.*) It would thus have to assign an employee at each store to manually review the contents

3

of the store's incident report packets. (*Id.* at 7.) Since those records are not computerized, they would take hours to perform, which would require Belk either to hire a consulting firm to review them or pull employees off the retail floor. (*Id.*)

Belk also asserts that the information sought is not even helpful. "Belk is not a 'box store.' Most of its stores are leased and many were taken over when Belk acquired another retailer." (*Id.* (quoting McGann aff.).) Accordingly, Belk stores are not identical and do not have the same or similar electrical fixtures. (*Id.* at 7-8.) Each outlet must be viewed in its entirety. Its attributes are determined by the contractor who installed it, the type of flooring surrounding it, the substrate into which it is installed, and its visibility relative to the surrounding floor. (*Id.* at 8.) Since there is no way to ensure any consistency from outlet to outlet, much less store to store, Belk argues that any information about falls relating to electrical outlets at other stores would be inadmissible and irrelevant. (*Id.*)

As for the remaining interrogatories, Belk contends that the number 10 request for *every* trip and fall, regardless of cause and time, is far too broad. (*Id.* at 9.) And Belk claims that interrogatory 17,

4

requesting Belk to identify those stores that have outlets that are substantially the same as the outlet on which plaintiff Hollie Wiggins allegedly tripped, would require a store by store search performed by ill-equipped retail staff. (Doc. 25 at 11-14.) It notes that the parties' rival engineer witnesses in this case cannot even agree on the height of the electrical box in question. (*Id.* at 13.) Hence, having 30 untrained individuals attempt to measure fixtures and determine code compliance would be utterly fruitless. (*Id.*) Instead, Belk states that plaintiffs are welcome to send their own experts to review each of the 30 stores. (*Id.* at 14.)

The Court agrees with Belk. While these interrogatories *could* lead to useful information for plaintiffs, they really amount to little more than a fishing expedition, and plaintiffs have conceded as much in their later briefs. For instance, they do not dispute that the second floor of the Savannah Belk, which is where Wiggins was injured, was remodeled, at which time the boxes were likely installed. (Doc. 28 at 3.) Hence, the second floor of the Savannah store is unique among all Belk department stores. And plaintiffs fully anticipate that "none of the Belk stores -- the 30 which have been requested to be reported -- none will have the floor

devices more than 3/16th inch (.187 inch) above floor level -- and none of these will reflect accidents." (Doc. 28 at 4.) Indeed, "it will be a surprise if any of the 30 stores have electrical devices over 3/16th inch above walking surface, and likewise, a surprise if any accidents involved such." (*Id.* at 7.)  Moreover, plaintiffs have suggested that even if Belk *did* have multiple injuries from raised outlets, it would be irrelevant to the issue of Belk's knowledge of the danger they posed.  They point out that under the applicable statute, O.C.G.A. § 51-3-1, Belk is *presumed* to have knowledge of "static" dangers like the one in this case. (Doc. 28 at 5 (citing, *inter alia*, *Cocklin v. JC Penney Corp.*, 296 Ga. App. 179, 182-83 (2009).)  If Belk is presumed to have knowledge, it stands to reason that Belk's knowledge of other such incidents has little or no bearing on this case.[4]

The interrogatories are also exceedingly broad.[5]  Some seek

---

[4] In their initial brief, plaintiffs claimed that Belk's knowledge of the outlet was critical to the claim, and hence the existence of other raised outlet injuries was relevant. (Doc. 21 at 5.)  In a subsequent reply, however, plaintiffs suggested that knowledge is irrelevant to such "static" dangers. (Doc. 28 at 5.)

[5] The Court is not convinced that the electrical-outlet requests are entirely irrelevant.  After all, the relevancy standard for discovery is far more elastic than for admission of evidence at trial.  Plaintiffs need only show that the information it seeks is relevant within the broad discovery standard set forth by Fed. R. Civ. P. 26(b)(1). Nevertheless, the discovery requests are exceedingly burdensome and seek information that likely will be of little use in their case.

information regarding every outlet-related, trip-and-fall incident as to both customers and employees. Others seek information regarding every raised outlet in multiple Belk stores. And interrogatories 8 and 10 seek information regarding every single trip-and-fall incident. This particular incident, however, involved a raised outlet in a customer walkway. General trip-and-fall claims are largely irrelevant. As for the remaining requests, raised outlets hidden under or behind Belk wares would not be helpful to plaintiffs' claims, other than to show in a general sense that Belk understood that such outlets were dangerous.[6] A jury can likely infer as much based upon the evidence plaintiffs have already gathered, showing that such outlets are exceedingly rare (and for the good reason that they pose an obvious hazard).

Finally, the cost of undertaking such discovery would prohibitively expensive. Plaintiff Hollie Wiggins' medical expenses totaled only $35,000. (Doc. 1 at 8.) Certainly plaintiffs seek further compensatories and punitives, but discovery as broad as plaintiffs seek could conceivably exceed the total amount in controversy. After all, Belk would likely have to hire a team of experts to pore over their files and examine every

---

[6] And that is all plaintiffs are likely to uncover. They acknowledge in their briefs that such raised outlets are incredibly uncommon in customer walkways.

square inch of several enormous retail stores over a large geographic area.

For the reasons explained above, plaintiffs' motion to compel (doc. 21) is **DENIED**. Defendant's counter-motion for a protective motion (doc. 25) is **GRANTED**. Finally, the Court is satisfied that the circumstances of this case do not warrant payment of expenses. *See* Fed. R. Civ. P. 37(a)(5). While plaintiffs did not prevail, their motion was substantially justified.

**SO ORDERED** this  1st  day of September, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA