# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | |
|---|---|
| HOLLIE K. WIGGINS and LARRY F. WIGGINS, JR., <br><br>        Plaintiffs, <br><br> v. <br><br> BELK, INC., <br><br>        Defendant. | Civil Action File No.: CV411-88 |

## DEFENDANT'S MOTION AND BRIEF IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY

COMES NOW, Defendant Belk, Inc., and files this, its Motion and Brief in Support of Motion to Exclude Expert Testimony. Belk hereby moves the Court to exclude at trial the testimony of Dean E. Phillips, Esq., P.E. of Dean Phillips Associates, showing the Court as follows:

### INTRODUCTION AND STATEMENT OF FACTS

Plaintiff Hollie Wiggins contends she tripped and/or rolled her ankle on an electrical outlet located in the floor on the second level of Belk's Savannah store. *See* Plaintiffs' Complaint at ¶¶ 5-7; *see also* Deposition of Hollie K. Wiggins (hereinafter "H. Wiggins Depo.") at p. 43, ll. 7-11. Plaintiffs retained Dean E.

Phillips, an engineer and lawyer, to provide forensic engineering services in connection with this case. *See* Deposition of Dean E. Phillips, P.E. (hereinafter "Phillips Depo."), at Defendant's Exhibit "2", Section 6. Phillips is an engineer and a lawyer, but is not licensed to practice either field in the state of Georgia. *See* Phillips Depo., p. 6, ll. 9-10; p. 75, ll. 16-21; p. 78, ll. 7-16. He is a member of the American Society of Civil Engineers, the National Society of Professional Engineers and the Georgia Society of Civil Engineers; however, he let his memberships with the National Academy of Forensic Engineers and the American Society of Home Inspectors to lapse. *See* Phillips Depo., p. 78, ll. 22 through p. 80, ll. 19. He holds himself out as an expert in everything from sanitary and septic systems to hydrology and drainage as well slips, trips and falls. *See* Phillips Depo., p. 76, ll. 16-19; p. 77, ll. 18-20. He has never been involved in the design of an electrical receptacle. *See* Phillips Depo., p. 34, ll. 16-18.

Phillips visited the Savannah Belk store with Plaintiffs' counsel on May 23, 2011. *See* Phillips Depo., p. 13, ll. 11-12; p. 30, ll. 2-4. During that time he never watched anyone attempt to walk over the floor outlet at issue nor did he witness any falls or any individuals rolling their ankles anywhere in the store that day. *See* Phillips Depo., p. 30, ll. 16-23. Using a tri-square mitre and level, Phillips measured the outlet and concluded it is 9/16" tall. *See* Phillips Depo., p. 27, ll. 19-

2

21; p. 42, ll. 12-15.    When measuring the floor outlet, Phillips compressed the surrounding carpeting by applying pressure the vertical member of his mitre square to obtain what he contends is the "full height" of the outlet.  *See* Phillips Depo., p. 44, ll. 7-12.  Phillips did not measure the amount of pressure he applied while taking his measurements of the outlet.  *See* Phillips Depo., p. 45, ll. 4-9.  After taking his measurements and conducting a telephone interview with Plaintiff Hollie Wiggins, Phillips prepared a report concluding that there is "no known specific building code requirement concerning the height and location of electrical floor outlets."  *See* Phillips Depo., at Defendant's Exhibit "2", Section 2, p. 4. Despite the lack of a building code violation, he concluded, among other things, the floor outlet "pose[d] a distinct hazard," Belk was negligent in allowing the condition to exist and its negligence was the direct cause of Ms. Wiggins' injuries. *See* Phillips Depo., at Defendant's Exhibit "2", Section 2, p. 5.  For the reasons set forth below, Phillips' testimony should be excluded at the trial of this case.

## ARUGMENT AND CITATION OF AUTHORITY

In determining the admissibility of expert testimony, the District Court acts as a gatekeeper and must carefully analyze the testimony prior to its admission. *See* Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).  The U.S. Supreme Court extended the District Court's gate keeping obligation to all testimony based

3

on technical or other specialized knowledge *See* <u>Kumho Tire Co., Ltd. v.</u> <u>Carmichael</u>, 526 U.S. 137 (1999).  This critical test is reflected in the Federal Rules of Evidence:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  When analyzing whether the proposed expert is testifying to knowledge that will assist the fact finder in understanding or determining a factual issue, the Court must "make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." <u>Daubert</u>, 509 U.S. at 593.  The four non-exclusive <u>Daubert</u> factors to be considered by the

4

Court are:

> "(1) whether the theory in question can be and has been empirically tested; (2) whether the theory in question has been subjected to peer review and publication; (3) the theory's known or potential error rate and whether that rate is acceptable and (4) whether the theory is generally accepted in the applicable community."

509 U.S. at 593-595.   When the Daubert factors are applied to the testimony offered by Plaintiffs' expert, it becomes clear that his testimony is neither reliable nor relevant and therefore should be excluded.

In his report, Plaintiffs' expert concedes there is no specific building code requirement concerning the height and location of electrical floor outlets and therefore no code violations.  He is unaware of any studies or analyses undertaken that establish a maximum acceptable height for floor mounted electrical receptacles in areas of pedestrian traffic.  *See* Phillips Depo., p. 68, ll. 12-17. In the absence of an actual code violation, Phillips relies on "custom." He claims it "is custom to have anything that is pedestrian rights of way to be flush with the floor." *See* Phillips Depo., p. 69, ll. 7-11 (emphasis added).  Despite testifying that "custom" dictates all floor-mounted installations located in areas where there

might be pedestrian traffic must be flush with the ground, he also testified that "custom" dictates floor-mounted fixtures should not exceed 3/16" in height. He cites no authority for either version of this alleged "custom." Interestingly, he also declares any elevation change in a pedestrian walkway less than ¼" is "quite acceptable" and even conceded an elevation change of ½" is permissible. *See* Phillips Depo., p. 105, ll. 18-25; p. 106, ll. 2-6, 12-14.

In the present case, he concludes the floor outlet violates his arbitrary designation, which he claims is custom throughout the industry, because he determined the height of the outlet at issue to be 9/16". His contention that the height of this outlet violates "custom" is based solely on a measurement which is incapable of validation or reproduction. Phillips admitted manipulated the surrounding carpet when taking his measurements but did not and cannot quantify the extent to which the carpet was manipulated, nor can he quantify what impact that would have on the measurements. Phillips, who is not a biomechanics or kinematics expert, claims his measurement would reflect the pressure applied to the surrounding carpet by Plaintiff Hollie Wiggins as she stepped on the outlet, yet he does not know how much force was applied to the carpet by Ms. Wiggins' foot or even what part of her foot, if any, contacted that particular area of carpet. His measurement is simply unreliable; it is not verifiable and the error rate is incapable

of calculation in light of the numerous variables that remain unquantified.  Indeed,
Belk's expert, Alan Campbell, P.E., measured the same outlet using a digital
micrometer that, to quote Phillips, is an "incredibly accurate measuring tool" and
concluded the outlet was no more than ½" high.  *See* Phillips Depo., p. 41, ll. 16-
25; p. 42, ll. 2-15.  Phillips even conceded if Mr. Campbell's height measurement
is correct, Phillips' report and analysis would be negated.  *See* Phillips Depo., p.
67, ll. 18-25; p. 68, ll. 2-5.

Much of the basis of Plaintiffs' expert's testimony regarding the applicable
"custom" for the height of floor-mounted installations in pedestrian walkways
appears to rely on a number of photographs of electrical outlets, grates and lights,
which he examined and declared to be installations with acceptable heights.  *See*
Phillips Depo., p. 85, ll. 4 through p. 87, ll. 10.  None of these fixtures were
measured by Phillips (or anyone else) and many he had never seen in person.  *See*
Phillips Depo., p. 85, ll. 4 through p. 89, ll. 20.  He made these assessments
without the benefit of any measurements, with little or no knowledge about the
location of the objects or date or time of day that the photos were taken.  He had no
information regarding the lighting conditions or angle of the camera in relation to
each fixture depicted.   Yet based on his review of the photographs—and
photographs alone—he determined whether the height variation was acceptable.

*See* Phillips Depo., p. 89, ll. 13-20.   Nothing about the study of engineering encourages or condones engineers who render opinions about the presence or absence of a building code violation due to the height of a floor mounted installation based solely on photographs, the parameters of which are neither known to nor controlled by the engineer rendering the opinion.   Such testimony flies in the face of sound engineering principles and, therefore, should be excluded under a <u>Daubert</u> analysis.   Indeed, Plaintiffs' expert ultimately conceded the photographs of other floor mounted electrical outlets and installations to which he has compared the outlet at issue are all worthless.   *See* Phillips Depo., p. 95, ll. 12-22.  If that is the case, and Belk submits it is, Phillips analysis is wholly unreliable and does not pass <u>Daubert</u> scrutiny.

Not only is Phillips' proposed testimony unreliable but it is completely unnecessary.   Phillips freely concedes that the standard applicable to this installation in the absence of a specific building code requirement is "good judgment."   *See* Phillips Depo., p. 63, ll. 16-25; p. 64, ll. 2-6.  He further agrees good judgment is a common sense analysis that does not require engineering training.  Therefore, his testimony will not assist the fact finders to understand the evidence or determine whether or not the outlet at issues represented a hazard.

Likewise, his conclusions that Belk was negligent in allowing this allegedly

hazardous condition [the floor outlet] to exist and that Belk's negligence was the direct cause of Plaintiff Hollie K. Wiggins' injuries is at least partially a legal analysis which requires no engineering training.  *See* Deposition of Dean Phillips, p. 65, ll. 7-22.  Indeed, the last two sentences of Plaintiffs' expert's report, "it is my opinion that the owners or operators of Belk were negligent in allowing this hazardous condition to exist and their negligence was the direct cause of Mrs. Wiggins' injuries.  It should have been detected and could have been easily eliminated by replacement with proper alternatives" contain no engineering analysis whatsoever but purely legal opinion.  At best, it requires the application of biomechanics, kinematics and/or medical analyses, all of which are well beyond the scope of Phillips' expertise.  *See generally,* Everett v. Georgia-Pacific Corp., 949 F. Supp. 856 (S.D. Ga. 1996) (excluding physician's testimony regarding causation where the physician was not qualified as an expert in toxicology and proposed testimony failed to meet Daubert standard for admission).  Phillips' testimony is unreliable, irrelevant and simply will not assist the jury to determine any fact at issue in this case or understand the evidence presented.  *See generally,* Dale v. General Motors Corp., 109 F. Supp.2d 1376 (N.D. Ga. 1999) (holding testimony of proposed expert was unreliable and irrelevant because it amounted to subjective belief and unsupported speculation).  His testimony does not pass

muster under <u>Daubert</u> and its progeny and should therefore be excluded.

## CONCLUSION

WHEREFORE, Defendant prays that for the above reasons, its Motion to Exclude Expert Testimony be GRANTED.

This 21st day of September, 2011.

Respectfully submitted,

OLIVER MANER, LLP

*/s/ Benjamin M. Perkins*
_____
Benjamin M. Perkins
Georgia State Bar No.: 140997
*Attorneys for Defendant*
*(signed by Erica L. Morton with*
*Benjamin M. Perkins' express*
*permission)*

OLIVER MANER, LLP
218 West State Street
Savannah, Georgia 31412
Phone: (912) 236-3311

*(signature continued on next page)*

HICKS, CASEY & FOSTER, P.C.

*/s/ Erica L. Morton*
_____

Erica L. Morton
Georgia State Bar No.: 140869
*Attorneys for Defendant*

*Admitted Pro Hac Vice*

HICKS, CASEY & FOSTER, P.C.
136 N. Fairground Street
Marietta, Georgia 30060
Phone: (770) 428-1000
Fax: (770) 428-4684

### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

HOLLIE K. WIGGINS and LARRY F.
WIGGINS, JR.,

                Plaintiffs,

v.

BELK, INC.,

                Defendant.

Civil Action File No.: CV411-88

---

### CERTIFICATE OF SERVICE

I certify that I have electronically filed this: ***Defendant's Motion and Brief in Support of Motion to Exclude Expert Testimony*** with the Clerk of Court using the CM/ECF (Pacer) system which will automatically send email notification of such filing to the following attorneys of record:

Arnold C. Young, Esq.
HUNTER, MACLEAN, EXLEY & DUNN, P.C.
200 E. Saint Julian Street
P.O. Box 9848
Savannah, Georgia 31412-0048

*(signature on next page)*

12

This 21st day of September, 2011.

Respectfully submitted,

OLIVER MANER, LLP

*/s/ Benjamin M. Perkins*

_____

Benjamin M. Perkins
Georgia State Bar No.: 140997
*Attorneys for Defendant*
*(signed by Erica L. Morton with*
*Benjamin M. Perkins' express*
*permission)*

OLIVER MANER, LLP
218 West State Street
Savannah, Georgia 31412
Phone: (912) 236-3311

HICKS, CASEY & FOSTER, P.C.

*/s/ Erica L. Morton*

_____

Erica L. Morton
Georgia State Bar No.: 140869
*Attorneys for Defendant*

*Admitted Pro Hac Vice*

HICKS, CASEY & FOSTER, P.C.
136 N. Fairground Street
Marietta, Georgia 30060
Phone: (770) 428-1000
Fax: (770) 428-4684