# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| HOLLIE K. WIGGINS and <br> LARRY F. WIGGINS, JR., <br><br> Plaintiffs, <br><br> v. <br><br> BELK, INC. <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action File No.: <br> ) 4:11-CV-00088-BAE-GRS <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFFS' BRIEF IN SUPPORT OF
## MOTION OPPOSING SUMMARY JUDGMENT

COME NOW, Plaintiffs Hollie K. Wiggins and Larry F. Wiggins, Jr., and file this, their Brief in Support of Motion Opposing Summary Judgment, and respectfully show this Honorable Court as follows:

### I.  STATEMENT OF FACTS

This premises liability case arises out of a trip and fall accident which occurred at the Belk store at Oglethorpe Mall in Savannah, Georgia.[1] On December 26, 2009, Mrs. Wiggins and her mother, Margaret V. Knox, visited that store so that Mrs. Wiggins could return an item she received as a Christmas gift the previous day.[2] Mrs. Wiggins had not visited that particular Belk store since approximately 1990 and had not previously walked in the area of the incident.[3] On the day of the incident, the store's main aisle was filled with Christmas merchandise displays and

---

[1] Complaint, ¶¶ 5-6.

[2] Deposition of Hollie K. Wiggins, p. 26, ll. 2-8; p. 27, ll. 22-25.

[3] Deposition of Hollie K. Wiggins, p. 25, ll. 3-9.

"extraordinarily crowded" with other shoppers.[4] To avoid this crowded main aisle, Mrs. Wiggins and her mother attempted to leave by walking down a side aisle in the linen department.[5] Mrs. Wiggins' mother was walking approximately one stride ahead of her and immediately to her right.[6] They could not walk side-by-side because the aisle was too narrow.[7] The aisle was also lined with merchandise stands displaying bedding and other similar goods.[8] While walking down that carpeted aisle, Mrs. Wiggins' attention was drawn to a fleece blanket displayed on a nearby merchandise stand to her left; she reached out and touched it as she walked by.[9] With her next step, she rolled her ankle on a raised electrical outlet and fell into her mother[10] That outlet was raised $9/16^{th}$ of an inch above the ground.[11] Attached hereto as <u>Exhibit A</u> is the Affidavit of Nicholas J. Laybourn, which includes photograph exhibits of the outlet in question, including a photograph of the outlet next to a standard ruler. Mrs. Wiggins did not (and is believed could not, from behind her mother) see the outlet in the carpet before she stepped on it and fell.[12] However, she did feel the domed outlet beneath her foot.[13] She seriously injured her right ankle as a result of stepping on the device and subsequently had

---

[4] Deposition of Hollie K. Wiggins, p. 37, ll. 18-25 and p. 38, ll. 2-5; p. 40, ll. 5-10; p. 65, ll. 18-19.

[5] Deposition of Hollie K. Wiggins, p. 38, l. 23; p. 40, ll. 5-15.

[6] Deposition of Hollie K. Wiggins, p. 41, ll. 15-20; p. 47, ll. 20-24.

[7] Deposition of Hollie K. Wiggins, p. 57, ll. 5-7.

[8] Deposition of Hollie K. Wiggins, p. 40, ll. 15-25 and p. 41, ll. 2-5.

[9] Deposition of Hollie K. Wiggins, p. 41, ll. 2-25 and p. 42, ll. 2-22.

[10] Deposition of Hollie K. Wiggins, p. 41, ll.2-25 and p. 42, ll. 2-22; p. 46, ll. 2-9; p. 47, ll. 22-25; p. 48, ll. 2-7.

[11] Deposition of Dean Phillips, p. 27, ll. 21; p. 35, ll. 22-25.

[12] Deposition of Hollie K. Wiggins, p. 49, ll. 6-8.

[13] Deposition of Hollie K. Wiggins, p. 47, ll. 22-25; p. 48, ll. 2-7.

surgery to repair the injury to that ankle on January 11, 2010.[14] Medical and related expenses total approximately $40,000.00 and other actual expenses of about $37,388. Since the date of the accident, Mrs. Wiggins has suffered continuing problems with her injured ankle.[15]

The basis of the Complaint is the failure of Defendant to use due care to keep the premises safe as required by O.C.G.A. § 51-3-1. Dean Phillips, an engineer identified as both an expert and a fact witness, measured the height of the outlet above walking level as 9/16th of an inch with a tri-mitre square with a level.[16] His measurement is substantiated by a close-up photo of the outlet next to a standard ruler reflecting the same.[17] Any object above one-half an inch above the level of the walking surface is a violation of the building code.[18] However, such devices in places where people walk are customarily either level with the floor or no more than 3/16th of an inch high.[19] Attached hereto as <u>Exhibit B</u> is the Affidavit of Arnold Young, which includes photograph exhibits of the outlet in question as well as similar outlets on the first floor of the same Belk store and various other locations around Savannah. These outlets are in keeping with the custom (i.e. 3/16th of an inch or less above the walking surface).

---

[14] Deposition of Hollie K. Wiggins, p. 84, ll.7-9.

[15] Deposition of Hollie K. Wiggins, p. 77, ll. 3-25 and p. 78, ll. 2-23.

[16] Deposition of Dean Phillips, p. 27, ll. 21; p. 35, ll. 22-25; See also Affidavit of Dean Phillips, attached to Plaintiffs' response to its Motion opposing the exclusion of Dean Phillips' testimony.

[17] <u>Exhibit B</u> to the Affidavit of Nicholas J. Laybourn.

[18] Deposition of Dean Phillips, p. 23, l. 15; p. 40, ll. 10-12. Although not of record, Defendant has an expert who made a report finding the elevation not to *exceed* one-half (1/2) inch and he therefore concludes no code violation. Even should his report be "of record" that would not resolve the issue.

[19] Deposition of Dean Phillips, p. 20, 2-25; p. 55, ll. 10-16; p. 69, ll. 21-23.

One quarter of a dollar is 1/16th of an inch thick, such that three quarters stacked on top of one another are 3/16th of an inch thick. For the convenience of the Court, visual representations of 3/16th of an inch and 9/16th of an inch are displayed below:



*[As reproduced by e-filing, these actual heights may print as slightly less than the actual measurement.]*

## II. SUMMARY JUDGMENT STANDARD AND BURDEN

The Federal Rules of Civil Procedure provide that a court should grant summary judgment where there is no genuine issue of material fact. F.R.C.P. 56 (c). The movant must demonstrate that the respondent does not have enough evidence to make out a *prima facie* case *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552. (1986). It is well settled that the party moving for summary judgment has the burden. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970). Any doubt as to the existence of a genuine issue of material fact will be resolved against the movant. *Id.* Because the burden is on the movant, the evidence presented to the court is construed in favor of the party opposing the motion and the opponent is given the benefit of all favorable inferences that can be drawn from it. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986). Facts asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, are regarded as true. *Coke v. General Adjustment Bureau*, 640 F.2d 584, 595 (5th Cir. 1981).

Because genuine issues of material fact exist in this case, Defendant's Motion for Summary Judgment should be denied.

### III. DEFENDANT'S ARGUMENT

Belk's articulated bases for summary judgment are that: Mrs. Wiggins failed to use due care for her own safety; the device on which she stepped was open and obvious; Mrs. Wiggins failed to look where she was walking, and was instead looking at merchandise displays; Mrs. Wiggins does not know what she stepped on to cause her injuries; and that Belk did not have superior knowledge that the device presented a hazard.

As will be reflected and discussed below, under Georgia law, with the facts in this case—Defendant's Motion is utterly groundless and fails to address (or mention) the principle case law in Georgia on the subject.

### IV. PLAINTIFFS' ARGUMENT AND CITATION OF AUTHORITY

Georgia courts have clearly and consistently held that summary judgment should not be granted in trip and fall cases like the one at bar. In two cases in particular—*Robinson v. Kroger*, 268 Ga. 735, 493 S.E.2d 403 (1997) and *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 679 S.E.2d 25 (2009)—the Supreme Court has given extensive treatment to slip/trip and fall cases on consideration for summary judgment.[20] In *Robinson*, the court noted that "[a]s a general proposition, the issues of negligence, contributory negligence and lack of ordinary care for one's own safety [in trip and fall cases] are not susceptible of summary judgment…but should be resolved by trial in the ordinary manner." *Robinson v. Kroger Co.*, 268 Ga. 735, 739, 493 S.E.2d 403, 408 (1997) (citing *Ellington v. Tolar Construction*, 237 Ga. 235, 237, 227

---

[20] Defendant inexplicably failed to discuss or even cite these definitive Georgia Supreme Court cases in its brief in support of its Motion for Summary Judgment. The law supporting Defendant's arguments is, at best, incomplete and, more accurately, misleading. Any discussion of trip and fall cases in Georgia which does not fully address these cases is more than inadequate. See Michael J. Gorby, PREMISES LIABILITY IN GEORGIA § 2:7 (2d ed. 2010).

910411-02

5

S.E.2d 336 (1976)). "Where reasonable minds can differ as to the conclusion to be reached with regard to questions of whether an owner/occupier breached the duty of care to invitees and whether an invitee exercised reasonable care for personal safety, summary adjudication is not appropriate." *Id.* (citing *Pound v. Augusta National,* 158 Ga. App. 166, 279 S.E.2d 342 (1981)).

Recently, in *American Multi-Cinema*, the Supreme Court "remind[ed] members of the judiciary that the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted *only when the evidence is plain, palpable, and undisputed*." *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 445, 679 S.E.2d 25, 28 (2009) (emphasis added). The *American Multi-Cinema* court clarified this admonition by noting that, "this means that issues such as how closely a particular retailer should monitor its premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law." *Id.* In short, where, as here, factual determinations must be made, summary judgment must be denied.

A two-prong test is applicable in trip and fall cases such as this. To recover at trial, the plaintiff must prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control. *Id.* at 444, 679 S.E.2d at 28. In light of this two-prong test, Georgia courts have developed a shifting burden standard for summary judgment determinations. Specifically:

> to survive a motion for summary judgment, a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control. *Id.* at 444-45, 679 S.E.2d at 28.

Defendant has failed to meet its burdens under this standard.

### a. Defendant had knowledge that the outlet created a hazard.

It is clear that Defendant had actual knowledge of the hazard presented by the outlet. It admits that it knew about the existence of the outlet, which is clearly taller than permissible under the building code and custom.[21] Assuming *arguendo* that Belk did not have actual knowledge of the hazard presented, it certainly had constructive knowledge because it had superior knowledge of the outlet's existence and was in a better position to remedy the hazard it created. "As to the first prong, even where there is no proof of actual knowledge, the failure to discover an alleged defect through the exercise of reasonable care in inspecting the premises gives rise to constructive knowledge where the owner or occupier had an opportunity to discover the dangerous condition and to remedy it." *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126, 128, 699 S.E.2d 380, 382 (2010) (citation omitted) (internal quotations omitted). And where, as here, the case involves allegations of a static, dangerous condition, the rule is well established that the basis of the proprietor's liability is his superior knowledge. *Id.* "Constructive knowledge may be inferred where there is evidence that an employee of the owner was in the immediate vicinity of

---

[21] Defendant's Brief in Support of Motion for Summary Judgment, p. 8.

the dangerous condition and could easily have noticed and removed the hazard." *Thompson v. Regency Mall Assoc.*, 209 Ga. App. 1, 3, 432 S.E.2d 230, 232 (1993) (internal quotations omitted) (citations omitted). Indeed *no* question exists that Belk was unaware of the existence and dimensions of the device in the walkway. It contends it failed to appreciate the hazard.[22]

In *American Multi-Cinema*, the Supreme Court denied the defendant's motion for summary judgment where the plaintiff was injured after tripping on a "wet floor" sign in the lobby of a crowded movie theater. *American Multi-Cinema, Inc. v. Brown*, 285 Ga. at 448, 679 S.E.2d at 30. There the defendant argued that although it knew of the existence of the sign, that it did not know that the sign presented a hazard and thus it did not have actual or constructive knowledge for the purposes of trip and fall liability. *Id.* at 446, 679 S.E.2d at 29. However, the Supreme Court dismissed this argument. It held that whether the defendant had actual knowledge of the hazard was a factual issue for the jury to consider. *Id*. Although it did not have to reach the issue of constructive knowledge based on its ruling that actual knowledge was an appropriate jury issue, it noted that "[it was not] inclined to interpret the concept of 'constructive knowledge' in such a way that it would exonerate [the theater's] employees for failing to notice and remedy the tripping hazard when their excuse, [a crowd of people], is the same reason [plaintiff] could not see the hazard and take actions to avoid it." *Id* at 447, 679 S.E.2d at 29. The court concluded its discussion of constructive knowledge by noting that "[a] jury could well find that as between [the theater] and [plaintiff], *[the theater] is in the better position to ascertain the risks to the public of the various approaches to addressing spills, and*

---

[22] If Belk—whose personnel occupy the sales floor all day, every day—contends that it did not appreciate that the device is a hazard to persons walking in the area, how can it possibly argue that Mrs. Wiggins, who was unaware of the device, should not only have seen it, but appreciated it was a hazard?

*that on these facts, [the theater] should be held liable for premises liability.*" *Id.* (emphasis added).

In *Perkins*, summary judgment was denied where an inn patron sued the inn for injuries sustained after he tripped on a curb, where there was evidence that no sign warned of the curb, no handrail was provided, and the area was poorly lit. *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126, 130, 699 S.E.2d 380, 384 (2010). There the court held that the inn had superior knowledge and that "the Company was on constructive notice of what a reasonable inspection would have revealed about the curb." *Id.* at 129, 699 S.E.2d at 383. Consequently, the inn "[was] charged with notice of *the curb's height in relation to the parking lot*, the lighting conditions, the view of the curb for someone descending the stairs, and the absence of any paint or warning signs regarding the curb, *especially as the evidence showed that other steps on the property had been painted*." *Id.* at 129, 699 S.E.2d at 383 (emphasis added). In short, the constructive knowledge rule of appreciation of hazard from *American Multi-Cinema* and *Perkins* and similar cases, is that a defendant's argument that it knew about the existence of an object, but did not know that the object was a hazard under the given conditions, is not sufficient for a court to grant a summary judgment motion. In such cases, a factual jury issue exists.

This is precisely the argument that Defendant makes in this case. It, just like the theater in *American Multi-Cinema* and the inn in *Perkins*, admits that it knew of the outlet's existence prior to Mrs. Wiggins' injury, but denies that it knew that the outlet was a hazard.[23] After expressly admitting knowledge of the outlet's existence, Defendant argues that constructive knowledge could not be imputed to it because it did not install the outlet, but ignores the fact that

---

[23] Defendant's Brief in Support of Motion for Summary Judgment, p. 8.

it purchased/leased and occupied the entire store where the outlet is located and maintained it.[24] These positions are inconsistent and insufficient for the grant of summary judgment under the law. As in *American Multi-Cinema*, Defendant is in a better position than Mrs. Wiggins to address dangers associated with tripping hazards in its store precisely because it had superior knowledge of the outlets in its store and this outlet in particular. Not only was Mrs. Wiggins' knowledge about the hazard inferior, Mrs. Wiggins had *no knowledge* that the outlet existed. If she had seen it, or otherwise knew that it existed, she might have avoided it and protected herself from tripping on it. Moreover, just like the inn in *Perkins* which had superior knowledge and was charged with knowing the curb's height and the fact that other curbs had been painted, Defendant, which had superior knowledge, should be charged with constructive knowledge of the outlet's $9/16^{th}$ of an inch height (a code violation) and the fact that other outlets throughout the first floor of the store were flush with the ground or well under half an inch in height. In short, merely considering Defendant's arguments, Defendant had constructive knowledge for the purposes of summary judgment. However, considering Defendant's previous knowledge of the hazard in connection with expert and factual evidence presented by Plaintiffs, the facts of this case clearly dictate that genuine issues of material fact exist.

### b. The Distraction Doctrine

Before considering whether Mrs. Wiggins exercised ordinary care, it is important to determine whether ordinary care is judged under the "plain view doctrine" (as argued by Belk) or the distraction doctrine. The courts of this State have held that the distraction doctrine controls in trip and fall cases like the one at bar. *See American Multi-Cinema*, 285 Ga. 442, 679 S.E.2d 25 (discussed *infra*); *Robinson*, 268 Ga. 735, 493 S.E.2d 403 (discussed *infra*); *Redding v.*

---

[24] Defendant's Brief in Support of Motion for Summary Judgment, p. 8. O.C.G.A. § 51-3-1 specifically refers to those who "occupy."

*Sinclair Refining Co.*, 105 Ga. App., 375, 124 S.E.2d 688 (1962) (applying the distraction doctrine where the plaintiff tripped over supports of a sign placed on the sidewalk by filling station managers); as previously noted, Defendant did not cite, much less address these definitive cases. The distraction doctrine holds that:

> one is not bound to the same degree of care in discovering or apprehending danger in moments of stress or excitement or when the attention has been necessarily diverted. Application of the doctrine has the effect of excusing an invitee from exercising the otherwise required degree of care because of the circumstances created by the purported distraction. [T]his is particularly true where the distraction is placed there by the defendant or where the defendant in the exercise of ordinary care should have anticipated that the distraction would occur. *Robinson*, 268 Ga. at 744, 493 S.E.2d at 411 (internal quotations omitted) (citations omitted).

In this case, the distraction doctrine controls because the distraction (i.e. the bedding merchandise display) was placed in the store by Defendant and Defendant intended that the display would draw the attention of customers. In fact, the distraction doctrine is particularly relevant given that Defendant did not merely anticipate that the display would have drawn attention *but hoped and intended that it would*. Indeed, the whole purpose of Defendant's merchandise display was to attract Mrs. Wiggins' attention and the attention of other customers in general:

> Q: Is there any reason why a customer should not walk in [the area where the fall occurred]?
>
> A: None that I know of. None that I know of.
>
> Q: Okay. In fact, if merchandise is displayed either like or similar to the way it is reflected in just for example Exhibit 2 [a photograph of the actual area], it would be an area that you would hope customers would walk in and look at the merchandise; is that true?
>
> A: True.[25]

---

[25] Deposition of Sanford W. Foskey (area manager, Belk), p. 28, ll. 11-19.

In sum, Defendant cannot intentionally divert an invitee's attention for its own profit and then claim that it is free of responsibility when that invitee is injured because she was doing exactly what the store encouraged her to do.

Defendant incorrectly argues that this case is controlled by the plain view doctrine.[26] In support of this argument, Defendant cites no post-*Robinson* cases (or *Robinson* itself for that matter), where the Supreme Court clearly articulated the distraction doctrine. Moreover, *Metro Atlanta Rapid Transit Authority v. Fife*, 220 Ga. App. 298 (1996), the primary case Defendant cites in support of the argument that the plain view doctrine governs, is not applicable to the facts of this case, because the distraction there, a car door, was not placed or caused by the defendant. The distraction doctrine, as it applies in the context of ordinary care in trip and falls cases on consideration for summary judgment, is discussed more thoroughly below.

### c. Mrs. Wiggins exercised ordinary care

When considering the totality of the circumstances—namely that Mrs. Wiggins was browsing for bedding in an upscale retail environment—Mrs. Wiggins exercised ordinary care despite the fact that she was looking at the goods and reached out to touch a blanket. One who owns or occupies land and "by express or implied invitation, induces or leads others to come upon his premise for any lawful purpose . . . is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. "By encouraging others to enter the premises to further the owner/occupier's purpose, the owner/occupier makes an implied representation that reasonable care has been exercised to make the place safe for those who come for that purpose, and that representation is the basis of the liability of the owner/occupier for an invitee's injuries sustained in a 'slip-and-

---

[26] Defendant's Brief in Support of Motion for Summary Judgment, pp. 11-12.

fall.'" *Robinson*, 268 Ga. at 741, 493 S.E.2d at 409 (citing Prosser, LAW OF TORTS, § 61, p. 422 (4th ed.)).

Defendant argues that Mrs. Wiggins failed to exercise ordinary care because she did not look down at the area where she tripped.[27] However, arguing that Mrs. Wiggins failed to look at the area where she tripped is insufficient given Mrs. Wiggins' invitee status under the distraction doctrine, not to mention that she believes her mother obstructed her view. Mrs. Wiggins' failure to exercise ordinary care for personal safety is not established as a matter of law by an admission that she did not look at site on which she subsequently placed her foot; the issue is rather whether under all the circumstances, she exercised the prudence that ordinarily careful person would use in a like situation. *Robinson*, 268 Ga. at 748, 493 S.E.2d 403, 414.

By arguing that Mrs. Wiggins failed to exercise ordinary care because she did not look, Defendant is applying a "plain view" standard of care to "distraction doctrine" facts. The Supreme Court has clearly "disapprove[d] of the appellate decisions which hold as a matter of law that an invitee's failure to see before falling the hazard which caused the invitee to fall constitutes a failure to exercise ordinary care." *Id.* at 743, 493 S.E.2d at 410. It has also "take[n] issue" with summary judgment grants in which it has been found that "an invitee fails to exercise ordinary care for personal safety as a matter of law when the invitee admits she failed to look at the location where she subsequently placed her foot." *Id.*

An invitee is charged with exercising ordinary care for personal safety and using ordinary care to avoid the effect of the owner/occupier's negligence after that negligence becomes apparent to the invitee or in the exercise of ordinary care the invitee should have learned of it. *Id.* However, "[t]he invitee is not required, in all circumstances, to look continuously at the

---

[27] Defendant's Brief in Support of Motion for Summary Judgment, pp. 11-12.

floor, without intermission, for defects in the floor." *Id.* (citations omitted). Indeed, Georgia courts have noted that the merchant "should be cognizant that the usual shopper travels the aisles with his attention directed toward the item he seeks . . . . The merchant deliberately attempts to draw the shopper's attention." *Id.* at 744-45, 493 S.E.2d at 411 (quoting *Sear, Roebuck & Co. v. Chandler*, 152 Ga. App. 427, 429, 263 S.E.2d 171 (1979)). The invitee "is not barred of a recovery simply because by extreme care on his part it would have been possible for him to have discerned [hazards] in the aisles or passageways customarily used by the store patrons at the merchant's tacit invitation." *Id.* (citing *King Hardware, Co. v. Teplis*, 91 Ga. App. 13, 15, 84 S.E.2d 686 (1954)). "Rulings that terminate a plaintiff's case in favor of the defendant because the plaintiff did not observe the hazard before the fall, but could have seen it had the plaintiff been looking at the floor relegate a business patron to licensee status by requiring the patron to be on the alert to discover defects. The business patron is an invitee who is not burdened so onerously." *Id.* at fn 3. What constitutes a reasonable lookout *depends on all the circumstances at the time and place*, and is thus a particularly fact based determination. *Id.* (citing *Ellington v. Tolar Construction*, supra, 237 Ga. at 238, 227 S.E.2d 336) (emphasis added).

In this case, Mrs. Wiggins' mother was walking approximately one stride ahead of and slightly to the right of Mrs. Wiggins. It is undisputed that Mrs. Wiggins and Mrs. Knox could not walk side-by-side because the aisle was too narrow.[28] One of the women had to walk in front of the other due to this narrowness. Moreover, it is not uncommon for a mother and daughter to walk closely together while shopping, particularly when they are walking down such a narrow, crowded aisle. Because Mrs. Knox was walking closely ahead of Mrs. Wiggins, Mrs. Wiggins was prevented from seeing the outlet. This is exactly like *American Multi-Cinema* where the

---

[28] Defendant's Theory of Recovery and Statement of Undisputed Material Facts as to which There Exists No Genuine Issue for Trial, ¶ 6.

plaintiff could not see the hazardous wet floor sign on which she slipped, because other customers blocked her vision.

Moreover, Mrs. Wiggins was walking down the bedding aisle in a department store and reached out to touch a fleece blanket that was particularly attractive to her.[29] Indeed, she considered purchasing it.[30] This behavior could not be more ordinary in the retail context. Moreover, it is exactly the type of behavior Defendant sought to elicit. Defendant sells merchandise when its invitees browse; it fills its retail space with displays to induce them to do so—all the better if a customer reaches out to personally handle the wares as Mrs. Wiggins did. In the bedding context, it is particularly foreseeable that a potential buyer would want to reach out and feel the texture of a comforter or blankets because people want to be most comfortable while resting in bed. It is absurd for Defendant to argue that Mrs. Wiggins acted unreasonably when she behaved exactly how Defendant wanted her to. If she, a typical shopper, behaved unreasonably, then presumably most of Defendant's customers are unreasonable, negligent, accident prone tort victims just waiting to be injured. The argument that Mrs. Wiggins behavior was anything but ordinary on the day she was injured is not only weak, it is audacious given that Defendant encourages just such behavior every day.

What is *extra*ordinary in this context is the fact that an electrical outlet protruded over half an inch out of the floor. It is unreasonable to expect every invitee to constantly visually scour the floor for such unusual hazards. Mrs. Wiggins was not strolling down River Street or any other of Savannah's cobblestone streets where uneven surfaces are the norm. Nor was she walking on one of the cracked, uprooted sidewalks, so prevalent in this historic town, on which

---

[29] Deposition of Hollie K. Wiggins, p. 40, ll.15-25 and p. 41, ll. 2-5.

[30] Deposition of Hollie K. Wiggins, p. 46, ll. 2-9.

pedestrians must be vigilant for lurking trip hazards. She was walking on a flat, even, carpeted surface in an upscale retail setting. Such aisles are cleared precisely so that customers can peruse the wares free of concern for trip hazards. Retailers keep such aisles free of clutter so customers are not distracted from the reason they are there—to shop. In short, when considering the totality of the circumstances, Mrs. Wiggins behaved just like any other ordinary customer would have in a department store; she shopped, exactly like Defendant wanted her to. In any event, such factual considerations are the clear province of the jury and not to be decided as a matter of law.

### d. Factual issues of causation exist.

Defendant argues that Plaintiffs have failed to demonstrate causation because Mrs. Wiggins did not see the outlet prior to her fall and cannot state with certainty that the outlet caused her fall.[31] However, Mrs. Wiggins testified that while she did not see the outlet before she stepped on it, she felt it under her foot, felt her ankle roll, fell, and immediately looked back and saw what she had felt—the outlet.[32] Defendant seems to require Plaintiffs to prove their case at the summary judgment stage. However, this ignores the well-settled standard that a plaintiff merely needs to demonstrate that a genuine issue of material fact exists to avoid summary judgment. Plaintiffs have shown more than the mere occurrence of a fall. Plaintiffs have demonstrated that a fall occurred at the exact location of an abnormal, protruding hazard located in a place where one would least expect to find it. Such evidence establishes far more than a mere supposition; it demonstrates the existence of genuine factual issue for jury consideration.

---

[31] Defendant's Brief in Support of Motion for Summary Judgment, pp. 11-12.

[32] Deposition of Hollie K. Wiggins, p. 41, ll.2-25 and p. 42, ll. 2-22; p. 46, ll.2-9; p. 47, ll. 22-25; p. 48, ll. 2-7; p. 116, ll. 8-25 and p. 117, l.1.

## V.    **CONCLUSION**

Not only does Defendant's brief arguing for summary judgment misstate the law and seek to apply the incorrect standard, it utterly fails to demonstrate any reasonable, good-faith basis for its motion. Georgia law is exquisitely clear that trip and fall cases like the one at bar are entirely inappropriate for summary adjudication precisely because they require such fact based determinations. Defendant's Motion for Summary Judgment should accordingly be denied.

**Observation:** The primary material issue here is: "why did Belk file the Motion for Summary Judgment?" in the face of clear law that not only it would not prevail—there being no such possibility. In the Joint Status Report, Plaintiffs made the following statement: "Defendant has stated an intention to file a Motion for Summary Judgment. Under the facts of this case, such a motion would have no chance of success and would not advance the case." Joint Status Report, p. 7-8. (Doc. 17.)

Submitted this 14th day of October, 2011.

                                      HUNTER MACLEAN EXLEY & DUNN, P.C.

                                      /s/ Arnold C. Young
                                      Arnold C. Young
                                      Georgia Bar No. 781500
                                      Attorney for Hollie K. Wiggins and
                                      Larry F. Wiggins, Jr.

200 E. Saint Julian St.
P.O. Box 9848
Savannah, GA 31412-0048
912-236-0261
912-236-4936 (fax)
ayoung@huntermaclean.com

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| HOLLIE K. WIGGINS and <br> LARRY F. WIGGINS, JR., <br><br> Plaintiffs, <br><br> v. <br><br> BELK, INC. <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action File No.: <br> ) 4:11-CV-00088-BAE-GRS <br> ) <br> ) <br> ) |

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of **BRIEF IN SUPPORT OF PLAINTIFFS' MOTION OPPOSING SUMMARY JUDGMENT** upon all parties to this matter using the CM/ECF system, which system will send notification of such filing to all counsel and parties of record herein.

This 14th day of October, 2011.

                  HUNTER MACLEAN EXLEY & DUNN, P.C.

                  /s/ Arnold C. Young
                  Arnold C. Young
                  Georgia Bar No. 781500
                  Attorney for Hollie K. Wiggins and
                  Larry F. Wiggins, Jr.

200 E. Saint Julian St.
P.O. Box 9848
Savannah, GA 31412-0048
912-236-0261
912-236-4934 (fax)
ayoung@huntermaclean.com