UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

HOLLIE K. WIGGINS and LARRY F. WIGGINS, JR.,

Plaintiffs,

v.          4:11-cv-88

BELK, INC.,

Defendant.

# ORDER

## I.  INTRODUCTION

Plaintiffs Hollie K. Wiggins ("Mrs. Wiggins") and Larry F. Wiggins Jr. ("Mr. Wiggins") (collectively, "Plaintiffs") filed a complaint against Defendant Belk, Inc. ("Defendant") arising out of injuries incurred by Mrs. Wiggins from a trip and fall incident while Mrs. Wiggins was a customer at a Belk's store in Savannah, Georgia on December 26, 2009. *See* Doc. 1 at 7-9. Mr. Wiggins is suing for loss of consortium. *See* Doc. 1 at 8. Before the Court are Defendant's Motion for Summary Judgment and "Motion and Brief in Support of Motion to Exclude Expert Testimony" ("Motion to Exclude"). *See* Docs. 33; 38.

## II.  BACKGROUND

On December 26, 2009 Mrs. Wiggins and her mother, Margaret V. Knox, visited a Belk department store at Oglethorpe Mall in Savannah, Georgia to return a Christmas gift on the second floor of the store. *See* Doc. 36-1 at 28. After returning the gift, Mrs. Wiggins and her mother began making their way out of the store. *See id.* at 40.

Because the store was crowded, in order to exit, they had to walk down a narrow aisle filled with merchandise. *See id.* at 42. The aisle was too small for the two to walk side-by side. *See* Doc. 36-2 at 12. Ms. Knox was walking slightly ahead and to the "right about a half to one stride ahead" of Mrs. Wiggins. *See* Doc. 36-1 at 43. As they exited, Mrs. Wiggins was looking and touching the merchandise. *See id.* at 42; Doc. 36-2 at 1. No one was hurrying or crowding her. *See* Doc. 36-2 at 15.

According to Mrs. Wiggins, as they were nearing the end of the aisle, she stepped on an electrical outlet, lost her balance, and fell. *See* Docs. 36-1 at 42-43; 36-3 at 24. The outlet was not covered or hidden, but because Mrs. Wiggins was walking close to her mother, she did not see the outlet. *See* Doc. 36-3 at 34.

After Mrs. Wiggins fell, her mother helped her from the ground to a sitting position on a wooden display. *See* Doc. 36-2 at 15. The two sought assistance from a Belk employee who returned with the manager. *See id.* at 16. Mrs. Wiggins wrote down her "name and address" for the manager. *See id.* As a result of the fall, she injured her right ankle and subsequently had surgery on the ankle on January 11, 2010. *See id.* at 32, 39.

## III.  MOTION TO EXCLUDE

Defendant moves for this Court to exclude the testimony of Dean E. Phillips ("Phillips"). *See* Doc. 38.

Plaintiffs retained Phillips to testify as to (1) the height of the electrical outlet in question; (2) whether the outlet violates an applicable building code; and (3) whether

such an outlet violates custom for safety. *See* Doc. 50 at 1-2. Plaintiffs intend to utilize Phillips as both a fact and expert witness. *See id.* at 2.

Defendant avers that Plaintiffs have failed to cite a single slip or trip and fall case where a federal court admitted expert testimony. *See* Doc. 57 at 2. This argument is non-dispositive, and also its implication is incorrect. *See Ahuja v. Cumberland Mall, LLC*, 2011 WL 4479216, at *4 (N.D. Ga. Sept. 26, 2011) (admitting testimony of human factors engineer in "slip and fall" case).

Phillips visited the Belk store on May 23, 2011, and using a Johnson USA tri-mitre square with a level, he measured the outlet in question as being elevated 9/16 of an inch above the floor. *See* Doc. 44-1 at 37. Describing how he obtained his measurement, Phillips attests:

> For each measurement, I placed the end of square next to the base of the outlet, lowered the level portion of the square to the top of the outlet, slightly depressing the carpet beneath the end of the square to ensure an accurate measurement from the top of the hard surface of the carpet (by pressing lightly on the fibers on top of the carpet) to the top of the outlet, checked to make sure the device was level, secured the level portion of the square with the screw, and read the measurement.

*See* Doc. 50-1 at 2.

Defendant argues that Phillips's measurement is inadmissible. *See* Doc. 38 at 6-7. Defendant contends that Phillips's methodology was unreliable because it is incapable of validation or reproduction. *See id*. Defendant avers that Phillips manipulated the carpet while measuring the outlet, and because Phillips did not measure the pressure applied to the carpet, it is now impossible to quantify and replicate the pressure and measurement. *See id.*

After consideration of the record and the parties' briefs, the Court is of the opinion that Phillips may testify as a fact or lay witness as to the height of the electrical floor outlet in question as it is within his personal knowledge and does not require inquiry under Federal Rule of Evidence 702. *See Kuithe v. Gulf Caribe Maritime, Inc.*, 2009 WL 4694790, at *5 n.8 (S.D. Ala. Nov. 25, 2009) (allowing expert to testify as lay witness to certain measurements).

Lay witnesses must testify to matters within their personal knowledge. *See* FED. R. EVID. 602. Under Federal Rule of Evidence 701, lay witnesses may offer opinions which are "(a) rationally based on the perception of the witness, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." No rule prevents witnesses from offering both expert and lay testimony. FED. R. EVID. 701 advisory committee's note (2000 amendment). ("Certainly it is possible for the same witness to provide both lay and expert testimony in a single case.")

As to Phillips's proposed testimony regarding building codes, in a footnote in its reply, Defendant contends that Phillips's

2

subsequent affidavit concluding that "three different building codes" had been violated should be excluded as an improper and untimely supplementation of his earlier Rule 26 expert report and in violation of Local Rule 26.1. *See* Doc. 57 at 4 n.1. Defendant otherwise provides minimal explanation for the aforementioned argument.

Plaintiffs contend that the outlet violated the Georgia Accessibility Code, which provides that "[c]hanges in level greater than ½ inches (13 mm) shall be accomplished by means of a ramp . . . ." § 120-3-20.16(2). This provision has the same requirements as the American Society of Testing and Materials ("ASTM") and the American National Standards Institute ("ANSI"). *See* Doc. 50-2 at 1.

Federal Rule of Civil Procedure 26(a)(2) provides that parties must disclose any expert opinions they intend to offer at trial. Rule 26(e)(1) imposes on parties the continuing duty to supplement their expert disclosures, "both to information contained in the report and to information provided through a deposition of the expert" up until the time the parties' pretrial disclosures under Rule 26(a)(3) are due. FED. R. CIV. P. 26(e)(1). "There is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when . . . an expert during a deposition corrects information contained in an earlier report." FED. R. CIV. P. 26 advisory committee's note.

Phillips's initial report, dated June 20, 2011, remarked that "[t]here is no known specific building code requirement concerning the height and location [sic] electrical floor outlets." *See* Doc. 44-5 at 9. The report did not mention any building code or standard. *See id.* at 6-10. In contrast, although principally discussing what he deemed as custom, Phillips testified in his August 31, 2011 deposition that his measurement indicated a code violation. *See* Doc. 44-1 at 25-27. Such code or industry standard concerned "floor walking areas" and required ramping for "raised areas in excess of a half-inch." *See* Doc. 44-1 at 27, 42; *see also* Doc. 44-3 at 6-7. Defendant thus had an opportunity to question Phillips about his opinion that a code violation existed. Subsequently, Phillips' affidavit, attached to Plaintiffs' response and dated October 13, 2011, attested that the electrical outlet in question violated three applicable building codes. *See* Doc. 50-1 at 1-2.

Because he had testified during his deposition to his belief that the outlet constituted a violation of general building codes, Phillips' affidavit did not constitute a complete reversal of his earlier deposition testimony nor even his initial expert report, which stated that there are no known specific code requirements referencing electrical floor outlets.

"[T]he burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (internal quotation omitted). Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

3

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

See also *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (noting that in diversity cases, the Federal Rules of Evidence governs the admissibility of evidence).

Rule 702 requires the district court to undertake a gate-keeping function in admitting expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The Court should use a three-part inquiry in assessing whether to admit expert testimony: (1) the expert must be qualified to testify competently regarding the matters he intends to address, (2) the methodology must be reliable under *Daubert*, and (3) the testimony must assist the trier of fact through the application of scientific, technical, or specialized expertise to understand the evidence or determine a fact in issue. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010).

In its reply, Defendant challenges Phillips's qualifications, asserting that he does not have a Georgia engineering license and has never designed "electrical receptacles." *See* Doc. 57 at 3. Phillips is a member of the American Society of Civil Engineers, the National Society of Professional Engineers, and the Georgia Society of Civil Engineers. *See* Doc. 44-2 at 32. He has an engineering degree from the University of Iowa, where he majored in structural and sanitary engineering. *See* Doc. 50-1 at 8. He has a Connecticut engineering license but recently allowed his Georgia engineering license to lapse. *See* Doc. 44-2 at 28. Moreover, he has over forty years of work experience in the engineering field and has undertaken numerous building inspections. *See* Doc. 50-1 at 5-6.

Based on his education, training, and experience, the Court concludes that Phillips is qualified to proffer expert testimony in this case.

As to reliability, the *Daubert* Court listed four factors for courts to consider in determining whether an expert's methodology was reliable: (1) whether the theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "in the case of a particular scientific technique, . . . the known or potential rate of error," and (4) whether the theory of technique is generally accepted in the relevant scientific community. 509 U.S. at 592-94. Yet, this list is non-exhaustive, and district courts have "substantial discretion" in determining how to test an expert's reliability. *Hendrix*, 609 F.3d at 1194; *see Sumner v. Biomet, Inc.*, 2011 WL 2749640, at *6 (11th Cir. July 15, 2011). As a result, "the trial judge must have

4

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

"[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). "Quite the contrary, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

Defendant attacks Phillips's conclusions that the height of the electrical outlet at issue violated custom which Phillips claims is to have a "floor walking area as level and smooth as possible." *See* Doc. 44-2 at 22. Defendant contends that Phillips has cited no authority for this belief, and argues that Phillips' testimony on customary heights of floor outlets is contradictory. *See* Doc. 38 at 5. Moreover, Defendant argues that much of the basis for Phillips's "custom" opinion is a series of unreliable photographs of electrical outlets, none of which were measured by Phillips and many were not even seen by him in person. *See* Docs. 38 at 7; 44-2 at 42.

Phillips relies on his experience and personal observations to justify his conclusion that custom dictates that any object at floor level be as "close to flush with the surface as possible." *See* Doc. 44-3 at 6-7. Nevertheless, he also testified that "customarily, anything under a quarter-of-an-inch is quite acceptable." *See id.* at 7. He later attested that such floor outlets were generally not more than 3/16 of an inch in vertical height. *See* Doc. 50-1 at 3. Such averment seems to partially rely on the fact that Hubbell, the manufacturer of the outlet at issue, no longer advertises the outlet in question and no floor outlet currently advertised by the company exceeds the "thickness of 3/16" of an inch. *See id.*

"[E]xperience in a field may offer another path to expert status." *United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004). The Committee Note to the 2000 Amendments of Rule 702 expressly states that:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

FED. R. EVID. 702 advisory committee's note (2000 amendment).

To the extent, if any, that Phillips's opinion relies on the referenced photographs, his "custom" argument is unreliable. Almost all of the photographs are of electrical outlets or receptacles that Phillips did not even measure, and almost all are, as Phillips admits, "worthless" overhead shots, providing no accurate or quantifiable measurements. *See* Doc. 44-2 at 48. Yet,

5

Phillips's opinion is not completely founded on such photographs.

Phillips attests that he has conducted over ten thousand building inspections over his career, including inspections for safety and for structural, mechanical, and electrical systems. *See* Doc. 50-1 at 2, 6. He claims such inspections included checking for trip hazards. *See* Doc. 44-3 at 4.

The Court concludes that based on Phillips's experience as an inspector and in the engineering field, he may opine that floor walking areas should be as level and smooth as possible. *See* Doc. 44-2 at 22. Beyond that he may not postulate as to what exact heights of floor outlets fit this "customary" mold. Phillips may, however, testify to the availability of lower profile floor outlets.

In addition, Defendant contends that Phillips's proposed testimony will not assist the fact finder to understand the evidence or determine a fact in issue because the standard of installing elevated floor outlets involves a common sense analysis, not amenable to expert testimony. *See* Doc. 38 at 8.

Plaintiffs counter that Phillips's testimony will assist the trier of fact by explaining and discussing applicable building codes of which he is knowledgeable because of his expertise in engineering. *See* Doc. 50 at 9-10. Likewise, Plaintiffs contend that because of his decades of experience, *see* Doc. 50-1 at 2, Phillips has the requisite credentials and authority to discuss customary use of electrical outlets and will assist the trier of fact by explaining why or how certain outlets could be tripping hazards. *See* Doc. 50 at 10-11.

"[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. . . Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262 (citation omitted).

The Court has concluded that Phillips may testify to his measurement of the electrical outlet. Phillips may also testify to applicable general building codes as such codes or industry standards are not within the "understanding of the average lay person" and thus will assist the jury. Moreover, the Court concludes that Phillips's testimony of available lower profile floor outlets and that walking areas should be as level and smooth as possible will assist the jury in determining a fact at issue, whether the floor outlet constituted a trip hazard.

Finally, Defendant argues that Phillips's proposed testimony in his report concludes with an inadmissible legal opinion. *See* Doc. 38 at 9. Federal Rule of Evidence 704(a) provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Yet, "[a]n expert may not . . . merely tell the jury what result to reach. A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citation omitted).

6

Specifically, Phillips's report concludes:

> I believe that the owners of Belk and the people responsible for the safety of the store's clientele knew or should have known that domed floor fixtures . . . pose a distinct hazard, and that injuries . . . should have been anticipated . . . It is my opinion that the owners or operators of Belk were negligent in allowing this hazardous condition to exist and their negligence was the direct cause of Mrs. Wiggins's injuries.

*See* Doc. 44-5 at 10. To the extent that Phillips intends to so testify, the Court concludes that such legal proclamations are inadmissible. Phillips cannot simply expound the elements of a negligence claim and then tell the jury that Defendant was negligent.

Defendant's Motion to Exclude is **GRANTED** in **PART** and **DENIED** in **PART**. Phillips may testify as to his measurement of the electrical outlet and to the building codes and standards. Phillips may also testify that in his experience, floor walking areas should be as smooth as possible and that lower profile floor outlets are available. Yet, he may not postulate as to what exact heights of floor outlets fit this "customary" mold nor may he testify to the legal conclusion addressed above.

### IV. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.*, 941 F.2d 1428, 1437 (11th Cir. 1991).

"The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The nonmoving party then "may not rest upon the mere allegations or denials of [his] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1294 (11th Cir. 1998). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.

#### B. Analysis

Under Georgia law, "[t]o recover on a theory of premises liability, a plaintiff must

show injury caused by a hazard on an owner or occupier of land's premises or approaches that the owner or occupier should have removed in the exercise of ordinary care for the safety of the invited public." *See Am. Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (2009); *see also* O.C.G.A. § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.").

To survive a motion for summary judgment, a plaintiff "must come forward with evidence that . . . the defendant had actual or constructive knowledge of the hazard." *See Am. Multi-Cinema*, 285 Ga. at 444-45.

> At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the defendant's own acts or conditions under the defendant's control.

*Id.* at 445.

Furthermore:

> issues such as how closely a particular retailer should monitor its premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law.

*Id.* at 445.

Thus, "summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (1997).

"[P]roof of a fall, without more, does not give rise to liability on the part of a property owner or proprietor." *Gibson v. Symbion, Inc.*, 277 Ga. App. 721, 722 (2006). The basis for the owner's liability is the owner's 'superior knowledge . . . of the existence of a condition that could subject the invitee to an unreasonable risk of injury." *Bonner v. S. Rest. Grp., Inc.*, 271 Ga. App. 497, 499 (2005) (internal quotation omitted).

The Court notes at the outset that Defendant relies on several pre-*Robinson* cases in its briefs. "In light of *Robinson*'s significantly lightening the plaintiff's load in proving a trip and fall case, and its reminder that most routine issues in such cases are not subject to summary adjudication, pre-

8

*Robinson* cases affirming summary judgment must be carefully scrutinized." *Hamilton v. Ky. Fried Chicken of Valdosta, Inc.*, 248 Ga. App. 245, 247 (2001).

After a review of the record, the Court concludes that Plaintiffs have produced sufficient evidence to survive summary judgment.

1. Belk's Knowledge

Defendant first argues that the electrical outlet is a static condition and therefore not a hazard. *See* Doc. 34 at 7.

"A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it." *Bullard v. Marriot Int'l Inc.*, 293 Ga. App. 679, 681 (2008). Defendant is incorrect in its broad contention that a "static condition is not a hazard." *See* Doc. 34 at 7. "[T]he fact that the [outlet] is a static condition, ostensibly open and obvious, cannot automatically absolve the owner/occupier from liability, if any from its failure to exercise ordinary care . . . . To do so would 'relegate a business patron to licensee status by requiring the patron to be on the alert to discover and avoid defects . . . ." *Jackson v. Waffle House, Inc.*, 245 Ga. App. 371, 374 (2000).

This is not a case where Mrs. Wiggins was a frequent customer or passerby through this particular area or store. "[A] claim involving a static defect differs from other slip and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have equal knowledge of it and cannot recover for a subsequent injury result therefrom." *Trans-Vaughn Dev. Corp. v. Cummings*, 273 Ga. App. 505, 508 (2005). Mrs. Wiggins testified that she had not been in this particular Belk store since 1990. *See* Doc. 36-1 at 27. Moreover, her mother purportedly obstructed her view of the outlet. *See* Doc. 36-3 at 34.

Next, Defendant asserts that it had no knowledge that the electrical outlet was a hazard. *See* Doc. 34 at 8; *Metts v. Wal-Mart Stores, Inc.*, 269 Ga. App. 366, 367 (2004) ("Without evidence of the existence of a dangerous condition, there can be no evidence that the defendant had any knowledge of the danger, and therefore no recovery for the plaintiff."). Defendant argues that knowledge cannot be imputed to it because it neither constructed nor placed the outlet in the floor. *See* Doc. 34 at 8.

Plaintiffs aver that Defendant had actual knowledge of the hazard because Defendant admits to knowing of the outlet's existence. *See* Doc. 45 at 7. Defendant counters that it had no notice or actual knowledge of the outlet's hazardous condition as "no one ever reported that the outlet was a dangerous condition or caused any slip, trip, fall or injury." *See* Doc. 34 at 9. Sanford W. Foskey ("Foskey"), Belk's regional and store manager at the time of the incident, averred that he had no personal knowledge of any complaints about a customer tripping and falling over a electrical outlet in the Belk store. *See* Doc. 40-1 at 6, 45-46.

The lack of prior trips, falls, or incidents involving the outlet may ultimately weigh against a finding that Defendant had constructive or superior knowledge. *See Bonner*, 271 Ga. App. at 499; *Mech. Equip. Co. v. Hoose*, 241 Ga. App. 412, 414 (1999); *Steele v. Rosehaven Chapel, Inc.*, 233 Ga.

9

App. 853, 854-55 (1998); *Lindsey v. Ga. Bldg. Auth.*, 235 Ga. App. 718, 720 (1998). But, the lack of prior accidents is not dispositive on the issue of knowledge. *See Landrum v. Enmark Stations, Inc.*, 310 Ga. App. 161, 162 (2011); *Cocklin v. JC Penney Corp.*, 296 Ga. App. 179, 182-83 (2009); *Wood v. Winn-Dixie Stores, Inc.*, 244 Ga. App. 187, 188 (2000) (stating that failure to institute a reasonable inspection procedure demonstrates constructive knowledge, regardless of lack of prior incidents).

Plaintiffs cite *Perkins v. Val D'Aosta Co.* and *American Multi-Cinema* for the proposition that knowledge of the condition but not its hazardous quality does not automatically entitle the proprietor to summary judgment. *See* Doc. 45 at 8-9. Defendant attempts to distinguish *American Multi-Cinema*, where the court held that the defendant had actual knowledge of the hazard, by stating that the plaintiff there presented evidence that the sign easily collapsed in pedestrian traffic. *See* Doc. 54 at 3-4.

"[E]ven where there is no proof of actual knowledge, the failure to discover an alleged defect 'through the exercise of reasonable care in inspecting the premises gives rise to constructive knowledge where the owner or occupier had an opportunity to discover the dangerous condition and to remedy it.'" *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126, 128 (2010) (quoting *Cocklin*, 296 Ga. App. at 182-83). *Robinson* provides that the proprietor must:

> Exercise the diligence toward making the premises safe that a good business person is accustomed to use

in such matters. This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises

268 Ga. at 740 (internal citation omitted).

"[N]o constructive knowledge of an unknown defect is inferred if the defect could only have been discovered by an inspection requiring the exercise of extraordinary care." *Ferguson v. Premier Homes, Inc.*, 303 Ga. App. 614, 617 (2010). Nevertheless, notice of the defect is presumed in cases of defective construction, including code violations. *Cocklin*, 296 Ga. App at 182; *see also Rutherford v. Revco Discount Drug Ctrs., Inc.*, 301 Ga. App. 702, 703 (2009). Citing an unpublished 2007 Eleventh Circuit opinion, *Jones v. Wal-Mart Stores, Inc.*, Defendant argues that because it did not install the outlet, knowledge of any defect cannot be imputed to it. *See* Doc. 34 at 8; 256 F. App'x 292 (11th Cir. 2007).

Nevertheless, Georgia courts' more recent application of the principle of presuming notice may not be interpreted as to narrowly apply only to the actual builder or designer of the condition or structure. *See Cocklin*, 296 Ga. App. at 182-83 (presuming notice and finding constructive knowledge on the part of JC Penney as deriving from the store's duty to inspect the premises to discover possible dangerous conditions and take reasonable precautions);

10

*Rutherford*, 301 Ga. App. at 703 (finding drug store had constructive knowledge where ramp's slope exceeded ADA standards).

Although recognizing that no code exists specifically referencing electrical floor outlets, Plaintiffs contend that the electrical outlet violated applicable general building codes and standards because the outlet extended 9/16 of an inch above the walking surface. *See* Doc. 45 at 3. Changes in level of more than ½ an inch above the walking surface, without a ramp, is a violation of the code and industry standards. *See id.*; *see also Rutherford*, 301 Ga. App. at 703 (expert testified that slope of ramp exceeded standards mandated by Americans with Disabilities Act); *Davis v. GBR Props., Inc.*, 233 Ga. App. 550, 551 (1998) (evidence that handrails violated national promulgated standards constituted evidence of hazardous condition); *Flournoy v. Hosp. Auth. of Houston Cnty.*, 232 Ga. App. 791, 792 (1998) (evidence admitted that ramp violated standard building code).

It is undisputed that Defendant knew of the floor outlet's existence. Moreover, Defendant was on constructive notice of what a reasonable inspection would have revealed about the floor outlet, such as its location and height. Phillips's testimony presents a fact or jury question over whether the raised outlet, located in an aisle frequented by customers, constituted a tripping hazard, of which Defendant should have been aware and remedied. *See also Perkins*, 305 Ga. App. at 127-29 (expert's affidavit created jury question on defendant's knowledge of a hazardous condition). The Court is mindful that "how closely a particular retailer should monitor its premises and approaches" should generally be decided by a jury. *Am. Multi-Cinema*, 285 Ga. at 445.

2. Mrs. Wiggins's Knowledge and Care

Even a code violation does not excuse the invitee from the duty to exercise ordinary care for her safety. *Febuary v. Averitt Props., Inc.*, 242 Ga. App. 137, 140 (2000).

Defendant argues that Mrs. Wiggins failed to exercise care for her own safety. *See* Doc. 34 at 9. Defendant argues that the plain view doctrine controls and establishes that Mrs. Wiggins failed to exercise ordinary care. *See id.* at 11.

Under this doctrine, "an invitee has a duty to look where she is walking and is imputed with constructive knowledge of large objects which are in plain view at a location where they are customarily found and expected to be." *Ward v. Autry Petroleum Co.*, 281 Ga. App. 877, 880 (2006). Defendant argues that the outlet would have been in plain view if Mrs. Wiggins had not chosen to walk "one-half to one step behind her mother." *See* Doc. 54 at 2.

Defendant cites *MARTA v. Fife*, 220 Ga. App. 298 (1996), but *Fife* has been called into doubt by the Georgia Court of Appeals after *Robinson*. *See Freyer v. Silver*, 234 Ga. App. 243, 246 (1998) (noting the case's similarity with *Fife* but concluding the binding effect of *Robinson*).

Plaintiffs, in contrast, argue that Mrs. Wiggins was distracted and the distraction theory controls. *See* Doc. 45 at 11. "[O]ne

11

is not bound by the same degree of care in discovering or apprehending danger in moments of stress or excitement or when the attention has been necessarily diverted . . . ." *Robinson*, 268 Ga. at 744 (quotation omitted). "Application of the doctrine has the effect of excusing an invitee from exercising the otherwise required degree of care because of the circumstances created by the purported distraction." *Id.*

Yet, a plaintiff cannot benefit from the distraction theory if the distraction is self-induced. *See id.* Although recognizing cases that ruled to the contrary, the *Robinson* court remarked that "[l]ooking at displayed merchandise . . . has been repeatedly found to constitute a self-induced distraction." *Id.*

Nevertheless, the *Robinson* court determined that Georgia appellate courts had been applying the "plain view" doctrine too broadly and invading the province of the jury. *See id.* at 742 (noting that the plain view doctrine "has been used in such a manner as to remove any reasonable limits on its application"). Because one inspecting a "post-fall scene can observe a hazard from a standing position is not dispositive of whether or not the injured invitee was exercising ordinary care for personal safety before the fall." *Id.* at 743.

> "[A]n invitee's failure to exercise ordinary care is not established as a matter of law by the invitee's admission that [she] did not look at the site on which [she] placed h[er] foot or that [s]he could have seen the hazard had [s]he visually examined the floor before taking the step which led to h[er] downfall."

> "Rather, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence an ordinarily careful person would use in a like situation."

*Ward*, 281 Ga. App. at 881-82.

Thus, the Court must look at the totality of the circumstances. *See Robinson*, 268 Ga. at 748. Per Mrs. Wiggins's testimony, Ms. Knox obstructed Mrs. Wiggins's view so that Mrs. Wiggins could not see the electrical outlet. *See* Doc. 36-3 at 34; *see also Brewer v. Atlanta S. 75, Inc.*, 288 Ga. App. 809, 810 (2007) ("Atlanta South has produced no evidence to disprove Brewer's testimony that his properly parked truck prevented him from seeing the height differential."). Whether Mrs. Wiggins was reasonable in walking "one half to one step behind" her mother while looking at the displayed merchandise is a question for the jury, not for the Court as a matter of law.

In addition, the Court is mindful that Mrs. Wiggins was not required "to look continuously at the floor for defects . . . since [she] is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe for the invitee and continues to exercise such care while the invitee remains on the premises." *Robinson*, 268 Ga. at 743.

Likewise, the plain view doctrine more naturally applies to "*large* objects." *Rozy Invs., Inc. v. Bristow*, 276 Ga. App. 278, 282 (2005). The electrical outlet cannot be considered a large object.

Therefore, the Court concludes that sufficient evidence has been presented to

12

create a jury question on whether Mrs. Wiggins exercised reasonable care in negotiating her way through the aisle. The evidence here is not "plain, palpable, and undisputed." *Robinson*, 268 Ga. at 748.

3. Causation

Defendant also argues that Plaintiffs have failed to establish causation, specifically whether a hazardous condition caused Mrs. Wiggins's fall. *See* Doc. 34 at 13-14.

> Causation is always an essential element in slip or trip and fall cases. Where the plaintiff does not know of the cause or cannot prove the cause, there can be no recovery, because an essential element of negligence cannot be proven. Where the plaintiff cannot identify the cause of the fall, summary judgment is appropriate . . . because causation cannot be established, and therefore, the defendant's knowledge of the dangerous condition, which actually caused the fall, cannot be shown as a precondition for liability.

*Moore v. Teague*, 255 Ga. App. 220, 222 (2002).

The Court concludes that Plaintiffs have presented sufficient evidence to prove that the floor outlet caused Mrs. Wiggins's fall and to survive summary judgment. Although Mrs. Wiggins did not see the outlet before she stepped on it and fell, *see* Doc. 36-2 at 4, she felt a change in elevation in the floor with her foot and also looked and saw the outlet after falling. *See* Doc. 36-3 at 26. She testified that there was nothing, other than the outlet, in the area where she rolled her ankle. *See id.*

Navigating the turbulent waters of the Georgia slip and fall jurisprudence is threatening to the careers of lawyers and judges. When the slippery slope of statutes, and judicial reasoning and opinions have been perused and a conclusion reached, only temporary relief is granted. The decision is a one-way ticket good for today only. Alas, tomorrow holds the real promise that another decision will come forth from some court or authority which, under our law, is binding upon this Court. For that reason, this case will need to proceed with alacrity.

In conclusion, Defendant's Motion for Summary Judgment is ***DENIED***.

### V.   CONCLUSION

Defendant's Motion for Summary Judgment, *see* Doc. 33, is ***DENIED***.

Defendant's Motion to Exclude, *see* Doc. 38, is ***GRANTED*** in ***PART*** and ***DENIED*** in ***PART***.

This 17th day of January 2012.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA